Raffleson. Correct, Your Honor. I may it please the Court, Jeffrey Raffleson, on behalf of Appellants Lear Corporation and Lear Mexican Seating, whom I will refer to collectively as Lear. Your Honors, we're here today on a very simple legal issue, which is whether a Texas law of incorporation by reference requires a signature on the contract memorandum purporting to incorporate terms from another document. We think it's actually a well-settled proposition under Texas law. Unfortunately, the Owen v. Hendricks opinion, which is the Texas Supreme Court opinion that established the rule, established it using language that addressed both statute of fraud and incorporation by reference issues, and in the process, the For context, this dispute arises in the connection with a commercial relationship between the parties, Lear on the one hand, and International Corrugated Packing Supplies, whom we'll refer to as Intercorpac, that lasted from 2007 to 2014, during which time Lear purchased $14.7 million worth of goods from Intercorpac. And now that the dispute is down to about $160,000 worth of those sales, Intercorpac is claiming that the language used in at least 20 purchase orders issued by Lear to Intercorpac over the course of that seven-year relationship was not sufficient to incorporate Lear's terms and conditions, which were elsewhere available because it lacked a signature. Simply put, the Texas law of incorporation by reference, as announced in the Owen v. Hendricks case, is designed to prevent the falsification or false testimony concerning additional terms that the court must consider as part of the agreement. And the safeguard against that falsification was not a signature on the incorporating document, but rather clear language in the contract memorandum identifying the external document and adopting its terms. And I think the language of the Owen v. Hendricks opinion that isn't quoted in its progeny makes this very clear. For the court's recollection, Owen v. Hendricks involved a real estate sale and letters exchanged between the broker and the owner of the property addressing obtaining a sale of the property and the commission to be paid for it. Your point about the clarity of terms does seem to make sense as the crux holding, but what would help me would be what's the best Texas case where the court finds the contract enforceable, but there is no signature, and yet it still upholds utilization of doctrine of incorporation by reference? Texas case... Texas case not involving a signature? Well, one that says because it's enforceable, but it doesn't have a signature, we will still apply the doctrine of incorporation by reference. I'm not aware of a Texas case that addresses that, Your Honor. Why would that make sense? Pardon? Why would that make sense to say the contract is enforceable, but we will not enforce a specific term of it? That wouldn't make sense, Your Honor. It is... I mean, it's either... I mean, the way I would look at it, it's either enforceable or it's not enforceable, and if there's any... unless there's a particular reason not to enforce a particular term of it, and here there is no reason. But the question that I would have to you, that assuming that we rule in your favor, that no signature is actually required under these circumstances, we have the factual issue of... they say that they didn't get the... that this was not done by purchase order, but done by email, and so many of these transactions were not subject to any terms that you imposed on them. That's correct, Your Honor, and I want to address that. I don't want to... I want to come back to it and not lose sight of... Well, okay, you can come back to it. I mean, I... No, no, no, no, no. I want to address your question right now, which is, yes, there are factual issues, but those factual issues aren't present on this appeal. If you recall the procedural history of this case... I'm asking, will we have to remand it? Yes, you do have to remand it. Okay, that's all I'm asking. We're asking you to overrule the trial court's legal decision that a signature is required and remanded for the trial court to address the factual issues of contract formation. Okay, that's all I'm asking. But the preface to your question, Your Honor, made actually a very important point, which is under Texas law, and this is generally the law, you give effect to every word in a contract, and that would necessarily include language purporting to incorporate terms from they considered that under...they considered the Corbin approach to incorporation by reference and the Williston approach to incorporation by reference, and decided that the only reason not to give effect to...well, they actually didn't decide that. That is, as long as there's language that is clear in identifying an external document and purporting to adopt it, we will give effect to that, because that is an adequacy... There's a certain line of jurisprudence that's developed over the last few years that would seem to separate an agreement to arbitrate from other terms of a contract in the requirement for its clear, unequivocal specificity, indicating that perhaps an agreement to arbitrate requires a more independent agreement from the rest of the contract than other terms would. Respectfully, Your Honor, I'm not sure if that's true of contractual provisions requiring the parties to arbitrate. I agree with you that those are analyzed according to ordinary contract terms, and the first inquiry is necessarily, did the parties have a valid and existing contractual agreement to arbitrate their disputes, and then the next inquiry, of course, is, and is this dispute within the scope of it? But you are right when it comes to provisions like the indemnification language or exculpatory language, and some of the cases involved in this case, that is some of the progeny evidence, do sort of conflate the conspicuousness and the clarity requirement of such contracts with requirements as to the language incorporating them. For example, the Matador opinion is a good example of that. It sort of conflated the obligation of conspicuousness, which is necessary for the exculpatory language at the time, which was pointing the receiving party to the website that contained that provision. There are other problems with the Matador opinion. But in general, I think the Owen v. Hendricks opinion is still the best case for establishing the proposition under Texas law, because it's frankly the only case that addresses the rationale. All the progeny, which the district court cited in its long recitation of other cases, merely quoted sort of the catchphrase or the short language from the opinion, but didn't quote other language of the opinion which gave the full context, and if you'll bear with me. So a lot of the progeny has gone in a misdirection. The language, whether you distinguish it as dicta or especially Matador, your point is they've picked up on Owen's requirement of a signature, and that isn't the essential holding of Owen? That is an incomplete holding of Owen. That is, most of the progeny involve signed contracts, so signed or unsigned isn't an issue. The only two that don't involve a signed contract are Carr opinion, at least of the cases we've seen here. And in both of those instances, incorporation by reference was not an argument that was made. For example, in the Carr opinion, the party who was being sought to, that is, they were seeking to bind MTD, the limited partnership, to an arbitration provision that appeared in a development agreement. That is, the parties had executed a development agreement and an operating agreement. The limited liability partnership. And so it necessarily wasn't a party to the operating agreement. It was created by the operating agreement. The operating agreement contained two references to the development agreement, which contained an arbitration clause. I hope I'm not boring you, Your Honor, because— Well, no, I guess, I mean, in my view, as the district judge here said, I'm looking at—the whole doctrine of law by incorporation seems to me we have two documents, and the And he's saying that under Texas law, there can't be that meeting of minds absent a signature in the charged document. That's right, because he's only reading—he's reading cases that only quote part of the Owen v. Hendricks case. And what's the—but has no Texas court ever said what you're saying, that those cases that only quote part are only quoting part? Has any Texas case? No. So get to, Obviously, you know, lurking here in an eerie guess is, with something as consequential as your brief makes it seem, all commercial transactions, why wouldn't we want to certify to let Texas correct its own misdirection? Well, two reasons. Your question relates to what about this void in Texas law? Why hasn't this come up before? And let me answer that by referencing you to the MEMC-Pasadena case, where it apparently did come up, but it was never an issue. That is, the MEMC-Pasadena case, that was the silicon wafer manufacturer whose manufacturing process created hazardous waste, and GIS was supposed to dispose of it, and there was CERCLA liability and Texas Solid Waste Disposal Act liability related to one of the sites they chose. In that case, the purchase orders were faxed from MEMC to GIS, and the opinion revolved around three provisions in the terms and conditions those purchase orders incorporated by reference and which were available on the internet. The court doesn't address the incorporation by reference argument. Nobody thought it was an issue, apparently. But it does analyze the contractual indemnification claim under three of the provisions in the terms and conditions which are relevant only if they are successfully incorporated by reference in the purchase order. So the first part of the answer to your question is, I believe it has come up because the practice of manufacturing, at least, of creating contracts through the issuance of purchase orders is ubiquitous. But you can have electronic signatures, so it wouldn't frustrate the whole practice of electronic purchases and orders to have a signature requirement. Well, it would add another process to it that is not required in most other jurisdictions, certainly not in the other jurisdictions in the Fifth Circuit, and not countenanced, at least under general contract laws. True. And that's one beacon in Williston. But here we are just looking at, is there an oddity of Texas law? Or stringency. Correct. And if there is an additional stringency on Texas law, you have to assess the impact of that additional stringency on literally billions of dollars of contracts already in Texas. And you cannot, therefore, incorporate very important terms that may not appear on the face of the purchase order, but are necessarily important, especially when it comes to a dispute like this. For example, it is very typical to include in external terms and conditions provisions addressing warranties, limitations of liability, damages, arbitration. That argues for how exceptionally important resolution of this is. That seems to be a powerful argument to ask Texas. Oh, and it's 1968. Just out of curiosity, I looked, when was the first electronic email? It wasn't until 1971. So there wasn't even an email. None of this was even possible when they wrote it. Correct, Your Honor. Although, theoretically, the Texas version of the UCC that permitted unsigned but enforceable contracts was adopted in 1966. But I looked at your brief closely. I don't understand the rule you're asking us to announce to be limited to merchants. You haven't asked us to limit the... No, we're not. Any agreement that is enforceable without a signature should be able to incorporate terms and conditions by reference the same way a signed contract. Well, why can't we certify the question? You obviously can certify the question. My concern about that is that if you certify the question, the Texas Supreme Court has discretion under Texas Rules of Appellate Procedure 58.1 to decline to accept the certified question. Then we're in a quagmire. You think they will decline? I would hope they would not decline. And, of course, I'm concerned about the parties and the delay and everything like that. But in terms of the significance of the issue, I would understand the court's interest in certifying it. But I would just point out a couple things. We do have a pending case, and Judge Wadorama made it very clear that your word is good enough for him. In footnote 7 of his opinion, he concludes, accordingly, the court considers itself bound by Texas precedents until the Fifth Circuit rules on this precise issue. So your word is good enough for him. Your word will resolve it. Your word will address a case that is out there now that misstates Texas. Okay. Well, how – I mean, just very briefly, if we wrote the opinion in your favor, how would you write it? I mean, to get around the principle that it must be signed. I think it's pretty simple. I think we simply – if you put Owen v. Hendricks in context, the references to signature are descriptive only. It is in the context of an agreement that had to be signed to be enforceable, and it addresses the quandary of incorporating terms from a document, an external document, that itself isn't signed. And the Owen v. Hendricks says it doesn't have to be signed. So you simply distinguish that case and move to the Texas Commercial Code, UCC, and just say that it does not require documents to be signed. Is that what you're – No, I'm saying Owen v. – the principle announced by Owen v. Hendricks just relates to language identifying the external document and adopting it, and that is equally applicable to contracts that must be signed to be enforceable or those that are enforceable if they're not signed. And that is the opinion I would urge you to write, that that principle is equally applicable to both types of contract. Whether or not the contract must be signed to be enforceable is a function of Texas statutes of fraud, including the UCC. Well, you don't think there's an open question? No, I don't think there's an open question. In Texas law? No, I don't. I think Owen v. Hendricks settles it. Specifically, if you look at – I realize my time is up, but if I could just quote from the opinion, referring to the two letters involved in Owen v. Hendricks, the two letters obviously relate to the same subject matter, but there is nothing in the letter signed by the respondent that even remotely suggests the existence of another writing. Since the contents of such letter do not show that it was based on an adoption of the letter written by petitioner, we hold that the two letters cannot be taken together as constituting the signed memorandum required under Article 6573A. Clearly, the signature referenced in Owen v. Hendricks is relevant only to satisfying the statute of frauds for enforceability and is not a requirement for incorporation by reference. I preserve the rest of my argument for rebuttal. Thank you. Thank you, sir. Thank you. She's got something for you there. Yes, sir. Thank you. I'd like to start by discussing a few of the facts that I think are very important here. The district court in this case found that not one purchase order was signed by my client, Andrew Korpak. In the Fifth Circuit opinion remanding the case previously, too, this court noted that the district court criticized Lear's affidavit for failing to explain the process by which materials were ordered and when, if ever, the purchase orders were sent to Andrew Korpak during the process. There is no evidence that's been presented in this case, not only with signature, but evidence presented by Lear that these purchase orders were ever sent to Andrew Korpak. So this is a far more serious situation than just the signature. But I thought on remand the district court resolved this by saying, I'm going to assume that they're enforceable contracts. I didn't read that. I've got it precisely. He found, of course, there were contracts when he said there were no mission purpose purchase orders. So, well, spell out where you're going with this. You're saying we don't have the legal issue presented to us? No. What I am saying is that they would have to show evidence that these purchase orders were even presented to my client. Or you could say that my client's bound by the language making reference to the Lear terms and conditions. I thought he conceded that we had to remand the case if we ruled in his favor. He did concede that much, Judge. I just wanted to make the point out that, in your opinion, I think it's important that— and the reason it's important is this, because in their brief they talk about these purchase orders like they were governing and Intercourt PAC had them and Intercourt PAC read them and Intercourt knew what the context was. They were never sent to Intercourt PAC. That's a factual dispute that's not been resolved yet. Well, but it's their burden of proof. They're going to show the right to arbitrate. I'm very confused. I thought it went back down and there were—it was accepted arguendo that, for example, there were responses from your employees received. So purchase order comes in electronically. It's acknowledged, yes, received, and then shipment. I thought that was sort of—we're assuming that, and then your position— No? I'm not going to say that I'm right about that. I've got the exact language right here. There's no reference to the purchase order in there, and I was just a little unclear what the judge was assuming. See, our problem is we believe they're contracts that were formed. Just like if you ask someone, will you provide 100 widgets, and then they send you the widgets, and then you send them payment, you have a contract form. There's no issue about contracts were formed. We're saying that the contracts were proven by performance. But there's no written document in this case. But you're claiming they phoned and you sent it, and therefore there was never a meeting of minds as to some outside reference at all, factually. Right. Okay? But if we look at his opinion and decide that he assumed arguendo that there are— Well, I would agree with that, Judge, if I'm reading that wrong. No, no, whatever. We'll look at that. Because otherwise, I think your threshold argument that you're making now requires yet another remand. Someone's got to ascertain what the contract we're discussing relates to. Right. And based on that assumption, Judge, I would like to point, there's a few cases. The In re Prudential case decided by the Texas Supreme Court in 2004 I think is very important. It adopted the incorporation by reference doctrine. I bring that out because there's some discussion about the UCC here and the fact that Owens was decided prior to maybe the adoption of the UCC. Well, the In re Prudential case is post-UCC. And that was a case where people rented from a commercial landlord, and they executed—there was a lease agreement executed, and they signed a guarantee. And in the guarantee, they promised to comply with the terms of the lease. And based upon that, that's when this—the incorporation by reference was— But do you disagree with his— Lucas, that's a microphone. I'm sorry, Judge. No, no. That long thing on the lectern is a microphone. If you get too far away from it, we're going to lose your— Their position seems to be quite simple. Owen is controlling Texas Supreme Court law, that the reference to a signature is either just descriptive or it only relates to enforceability because it pertains to statute of fraud. I think they have misread Owen, Your Honor, completely, and what they have left out. And I've got the Owen decision. But the—on page 166 of the opinion, this is the whole—this is the rule. They cite the rule. It is uniformly held that an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged. They make reference to there has to be a signature by the person sought to be charged. They go on to say any further extension of the doctrine of incorporation would permit the defendant to be bound contrary to the terms of the statute by writing which he has not signed. Contrary to the terms of the statute, but isn't that the statute of fraud? Yes, but there's—the statute of frauds and the doctrine of incorporation by reference are both involved in this case. And they had to apply the doctrine of incorporation by reference to apply the statute of frauds. If you were writing the certification question to the Supreme Court, what would you ask the Supreme Court to answer? My question to the Supreme Court would be—well, honestly, Judge, I don't think I would send a question to the Supreme Court. I'm trying to think. I think the logic of this decision is very clear. If you don't have a signature, I can make up any document and a business— You probably ought to stay there. Business people can make up any document and just say this is part of the contract, this is part of the contract. Where does the contract stop? Is it e-mails? Is it what somebody told somebody? Is it purchase orders? Is it, you know, some—I mean— But as to merchants in Texas, its signatures are already waived. Yeah, but that's —I think that's a misreading of 2.201 of the Business and Commerce Code. If you read that provision, it's on page 25 of the brief, because they set it out there. What it talks about is a confirmation of contracts. So if I have already entered into a contract with you and I'm businessman A, I can send you a memo saying, yeah, this is a confirmation that we've entered into this agreement for, you know, X product at this price to be delivered, you know, on these terms or whatever. And then the other businessman has 10 days. It's not, but it presumes a contract in existence. Right. But that gets back to your factual disagreement, which may be a valid one. I'm not criticizing. I just wasn't aware that we have a dispute as to whether factually there was an enforceable contract at all. I thought this was back up to us with that as an assumption. Well, and I could be wrong, Judge. I'm just reading the way I read the judges. I was— And neither of you have to agree with the certification question, but if you can't—if you appropriately are reluctant to give me suggested language for a certification question, tell me just how you would write this in your favor. How would you, if it were a single sentence in your favor, what are you writing? There was no factually— I think I would write it just the way the judge wrote it in his request. He sent us two questions that he wanted briefed after you remanded it, and I don't have the exact wording, but it is worded very well. It asked about whether there was a signature requirement, and the way he wrote it I thought was very well done. How would you write that? Huh? Is there a signature requirement? What would be the authority? Yes, there is a signature. That's my position. And what's the authority for that? Well, it goes to Hohenvee Hendrix. All those court appeal cases? Yes. I disagree with the In re Matador case they discussed. They say that's dicta. I don't think it's an alternative holding, footnote 2. I look at that as different than dicta. That was a backup reason the court gave for its ruling. You know, my problem basically with the appellants here is it is part of the rule. It says in the rule that you have to have a signed document. And they say, well, you haven't. You know, it's a new issue whether. What rule? I'm sorry? What rule that says you have to have a signed document? Well, I'm basing it on the case law, Hohenvee Hendrix, In re Prudential. There's a ton of cases that have been cited on that. You're not talking about a statutory rule? No, no. This doctrine of incorporation is a judge-made rule. But, I mean — But Hohen is 1968. And you say there are a ton of cases. Well, In re Prudential, there's a Fifth Circuit case that's very important. It was cited by the court. It's 2012. What's your best Texas appellate case? In re Prudential, I would say. Texas appellate-level case. I would say In re Prudential is Texas appellate-level. It says we're doing our best to apply Hohen. And we see, Owen, in spite of its core holding that it's got to be an explicit reference to the outside document, it was much more exact. It wasn't just explicit reference. It was required signature. The Bob Montgomery case is a good case, I believe. The what? The Bob Montgomery case is a good case. Bob Montgomery? But — and I say that because they draw the distinction between the one beacon, the Admiralty case, and Texas law. And they very clearly say that they're not going to follow one beacon because that involved maritime law, but they're going to apply state law. Okay. Now, I mean, you can go on and say, well, they didn't rule that. They can say that there was a — the problem in that case, I guess, the terms incorporated didn't deal with an arbitration agreement. It just said see terms for additional detail. So there wasn't the specificity that's required to do it. But that's the problem I see with all of appellant's arguments. I mean, they have no cases to support their position, but, you know, they — and we have several courts that cite the rule that you have to have a signature, and they just basically, you know, I think ignore that. Well, and we may have gone over this, but I guess I'm probing. You say they've got no cases. I'm wondering what's your case where Texas courts looked at an enforceable contract that drew reference to a website, which is ubiquitous, and yet they said those terms are not part of the contract because we don't see a signature, electronic or otherwise. The Matador case was one of those. Okay. It was not. They go through the discussion. Okay. I was going to say — oh, this M.C. case is very important, the footnote. That was — the issue wasn't raised in corporation by reference. Apparently it was just overlooked by that district court. This is on page 8 of their — or it's in their brief. But what happened in the footnote, you'll note, that it was later revised, so that case was set aside. It's not even present. And Section 10 was not applied to the GIS contract, so the footnote clarifies that that case — I mean, it doesn't exist. It was set aside. So I don't think it has any presidential authority at all. In fact, it's on page 25 of their brief, you know. Because originally, in the original opinion, they said that they would not incorporate Sections 12 and 15, I believe, but they would Section 10. But then in a modified decision, they come out and they said that GIS was entitled to summary judgment on Section 10. And so I don't see anything left in that case that can be cited or relied upon. I will say that one thing bothers us a little bit is that they say that we, Intercorp PAC, is asked to admit or deny that the following lear blank purchase orders were transmitted electronically. They reference this in their brief. I think it's at page 6 or so. And the response that was filed was the plaintiff cannot admit or deny this request. We don't construe that as an admission. The way I read their brief is they're attempting to construe it as an admission. So you're asking us to remand to tell the district court to determine whether or not the purchase orders here were even received, and if so, are they enforceable? Put aside any doctrine of incorporation. That's what you're asking. Well, that's assuming you don't affirm what the judge has ruled. I think he left that issue aside because I think he feels that this issue of the lack of the signature disposes of the case. So we would like you to remand, but remand with the point that the arbitration rules. You keep saying he feels, but I don't sense a lot of rigor in your argument that he's right. You're telling us he's right. Well, I believe he's completely right, yes. I mean, he is right. I mean, we have the cases that support our position. They have not one case, and I'm just making the point that he decided not to get into the contract formation issues because I think he feels he ruled that this resolves the case, just the issue of the lack of a signature. Do you agree of the Hendricks case? Of the what case? Of the Hendricks. Yeah, Hendricks and Ingray Prudential. And he cites cases. He cites even this Fifth Circuit case I've cited, or it's called Pressler. It's in his opinion. It's a 2012 Fifth Circuit case he cites where they — that cites favorably to Owens. So you have a circuit decision. It's called Pressler exploration, and it's in his opinion. But if you're still to us disputing that there are enforceable contracts, my own thought is the way the law works is we tell a federal district judge to resolve facts. We wouldn't certify to the Texas Supreme Court and say, let's give an advisory opinion. If the parties still haven't even agreed as to $160,000, if there even was a contract, it may be a little bit unfortunate to have to remand again, but let's just get those facts lined up before we or the Texas Supreme Court opine on a vast billions of dollars worth issue. Well, Judge, I would ask you to decide. The plaintiffs here have suffered a lot. There's been about four years in this case, and they've had to form a new corporation. They've suffered tremendously financially. We, of course, disagree with the plaintiffs or the appellants' position here. It's just been a constant. It's the third time now to try to get what was owed to them. You're saying it's down now to $160,000. Yeah. And it's all about did you get the purchase orders or not. You say you didn't. They say we're going to—let's just assume they did. I don't see why, in my own view, why we reach an issue that— Well, I just think what the judge ruled is— Yeah, you did that. You're right. He ruled that you don't need to go to the contract formation. Do you contend that the purchase orders were not received and filled by your company? In other words, do you by any chance agree that there were contracts entered and performed here, but that the arbitration clause or direction to the arbitration clause was not binding because you didn't sign the purchase orders before you filled them or after you filled them? Yes. I believe—well, I guess I have a problem with this whole— they call them blanket purchase orders, but if they're never sent to my client, it's not like all the cases I've been seeing where, you know, businessman A sends a purchase order to businessman B. It didn't happen in this case. When our clients didn't get paid for a percentage of these contracts, they created their own invoicing and sent it to Lear. There never were any. I mean, I have a problem with the whole concept that this is a purchase order in the normal sense. I mean, it's something that Lear kept internally, and I think that's what the district court's frustration was through this whole process. He's been asking Lear, can you tell us how the contracts were formed? I don't want to know some theoretical contract. I want to know exactly how were these formed. And as your opinion points out, they can only bring up one purchase order that accompanied an e-mail. They had to—and they found this, by the way, after the case was decided. And in that e-mail, it's got language in there that says that any e-mail sent by Lear is not binding on Lear. It's not—and the court points that out in its footnote, so it's disclaimer language. So I don't know what that e-mail by—it's August 10, 2008, 2010 by Blanca Solis. I don't know what that one e-mail proves when it has this disclaimer language. And so I—but I do think the judge was just largely frustrated here by the failure of Lear to clarify how its contracts were formed. Do you contend? He erred when he said that he would assume the purchase orders were enforceable or that the contract as a result of the purchase orders were enforceable. I don't know exactly. I would—I can't say it's called error because I've always understood assuming arguendo to mean that you're not finding that to be the case, but you're making that assumption. So I think he just made that assumption so that he could rule on the signature requirement. But I don't think he—so in that sense, I don't consider it an error. I think it's just an assumption he's making. You know, another problem here that's really troubling is it appears that all these contracts were divisible. There was never one written contract that glued everything together. For seven years, or 2007 to 2014, you just have these calls or e-mails into InterCorpac from Lear, and then, you know, InterCorpac would packages—send the packaging material, and there's nothing about any agreement over a period of time, nothing in writing. In most of these cases we're reading, there's some sort of written agreement between the parties as to what they're doing. So I don't know how you deal with that, but I think that we're going to have to apply this doctrine to each and every one of the 198 invoices because some of them are no longer at issue. But reference to 22 contracts he talks about, that doesn't apply because those purchase orders, because they never—they were never—again, I'm sorry. I'm getting back. What? Finish. No, he made the argument that 20 of the remaining purchase orders, there are 20 purchase orders that remain that have not been fulfilled, and that's what we're suing for. Again, my position is if they were not sent to InterCorpac, what's the point? What's the significance of it? I'm sorry. I guess I'm out of time. Any questions? Thank you, sir. Thank you, sir. If I may, Your Honors, a lot to address. First of all, you're absolutely correct that the district court did assume away the contract formation issues in order to focus specifically on the legal issue of what are the requirements of incorporation by reference. The specific language is, nonetheless, assuming arguendo that defendants have proven enforceable agreements through the course of dealing of the parties, they still have failed to prove a valid agreement to arbitrate, which is the language he used to introduce his discussion of the incorporation by reference. The reason the court should address this issue, the legal issue, and then remand for the district court to address the factual issue is that it is undisputed that every one of the invoices they assert are in question reference a Lear purchase order number. There are definitely questions of fact relating to the contract formation process. Is it undisputed that everyone left also does incorporate the arbitration clause? Is that undisputed? No, Your Honor. Well, I believe there's no dispute that there are 22 purchase orders referenced in the invoices at issue. Twenty of them include the language incorporating the terms and conditions. The two that don't involve about $1,500 worth of product. So what are you saying we do with those two? I don't think you do anything with those two, Your Honor. That is, if the trial court confirms that factual conclusion, then it can conclude that there was not a contract formed as to those that includes an arbitration clause unless it applies some other rubric like course of dealing and things like that by placing it in the context of a seven-year relationship. I think there are just too many factual issues even as to those two for this court to address. But the point I want to make is that if even one of the contracts at issue here was formed through a delivery in response to a purchase order that incorporated the language, then the district court has to address the incorporation by reference, which is why it needs the guidance of this court on whether Texas law requires a signature. The district court said that there were some, acknowledged that there were some purchase orders that included the language. Yes. There were some, and then he made that ruling. I don't see why that is not, I mean, I don't understand why that's not an issue presented to us to simply go up or down on how he read the Owens case and then remanded. Do you understand what I'm saying? And that's what I do, Your Honor. Well, as I understand, the issue before us is whether he properly applied the Owens case. Correct. And he applied it in such a way that did not allow recovery on any of the purchase orders. That's right. All right. If we rule in your favor, saying that that is a misreading of Owens, we remanded to him to apply the reading that we may dictate. Correct. With respect to, and then you put forth the purchase orders that you were claiming or being claimed to be unpaid. And you resolve those then as to whether, I mean, resolve whether those cases go to arbitration or not. That's exactly right, Your Honor. That is, with this court's guidance on the requirement of a signature, the district court then will be in a position to identify which invoices were, which contracts were formed with the purchase order and which were not formed by means of the purchase order that had the incorporating language. And he'll know what part of the dispute must be arbitrated and what part cannot. But opposing counsel is saying here they were all by phone. None of them were submitted. And if that's true, we don't need to reach this issue. But that's not true, Your Honor. That is one of the disputed facts. But has the district court ever said, made a finding that that's not true? There's no finding in the order on appeal. So you say it's not true. He says it is true. Why would we make that fact determination ourselves?  I don't think the record is before you to make that fact determination. I thought the whole purpose of the remand was to confirm that there's at least one contract that is enforceable that incorporates the website arbitration provision. We believe on remand that all the invoices in dispute, with the possible exception of the $1,500 I mentioned ago, were part of a contract that was formed by means of a purchase order that incorporated the arbitration language, and that entire dispute must be referred to arbitration. That's the facts of dispute, whether it's all or none. And there's not a record? That was what was assumed away. The court on remand from this court, when this court vacated his prior decision that did address the contract formation issues, he basically deferred deciding that on the second round. I do have to address a couple of other issues if I could. The Prudential case is not a UCC case. Your time has expired. Thank you, Your Honor. I'll call the final case for oral argument today.